```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
Ceasar F. Peralta,

                    Plaintiffs,              CV-04-3826 (CPS)

        - against -                          MEMORANDUM
                                             OPINION AND ORDER
WHM Tool Group, Inc.,

                    Defendant.

----------------------------------------X
```

SIFTON, Senior Judge.

Plaintiff, Ceasar F. Peralta, commenced this action by filing a complaint invoking this Court's diversity jurisdiction against defendant, WMH Tool Group Inc. The complaint sets forth claims for relief based on negligence, breach of express warranty, breach of implied warranty, and strict products liability. Defendant WMH now moves for summary judgment dismissing the complaint pursuant to Fed. R. Civ. P. 56. For the reasons set forth below the defendant's motion for summary judgment is granted.

## BACKGROUND

The following facts are taken from the submissions of the parties in connection with the present motion. They are

undisputed unless otherwise noted. Only facts relevant to the present motion will be discussed.

On January 30, 2004 plaintiff Peralta, a citizen of Queens, New York, was employed by United Custom Made Furniture. On that date he sustained injuries, including partial amputation, to several fingers of his left hand from a Powermatic woodcutting saw, Model No. 66, Serial No; 88662269. This serial number indicates that the saw was manufactured in 1998. In 1998, Powermatic saws, including Model No. 66, Serial No. 88662269 were manufactured by Devlieg-Bullard Inc.

On July 15, 1999 Devlieg-Bullard filed for protection under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Ohio, Eastern Division. In a September 1999 auction, Jet Equipment and Tools, Inc. ("Jet") submitted the winning bid for the Powermatic assets and the bankruptcy court approved Jet's purchase of the Powermatic Assets pursuant to the Asset Purchase Agreement.[1] In connection with the sale, the bankruptcy court issued an order titled: "Order Authorizing Debtor to Sell 'Powermatic Assets' Free and Clear of Liens, Encumbrances and Interests." On October 15, 1999 Jet formed the Delaware based, Powermatic Corporation, in order to purchase the Powermatic Assets. In 2001 Powermatic

---

[1] This was the same Asset Purchase Agreement originally agreed to by Sunhill as per the footnote above.

Corporation merged into Jet with Jet the surviving corporation. On March 14, 2002, Jet changed its name to that of WMH Tool Group, Inc. Powermatic saws are currently manufactured by defendant WMH Tool Group Inc., a business incorporated in Washington state and with its principal place of business in Illinois.

## DISCUSSION

A court must grant a motion for summary judgment if the movant shows that "there is no genuine issue as to any material fact" and that "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate "[w]hen the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000). Although all facts and inferences therefrom are to be construed in the light most favorable to the party opposing the motion, *see Harlen Assocs. v. Vill. of Mineola*, 273 F.3d 494, 498 (2d Cir. 2001),

the nonmoving party must raise more than just "metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586.

Local Rule 56.1(a)requires that all motions for summary judgment under Fed. R. Civ. P. 56 be accompanied by a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  A party's failure to do so "may constitute grounds for denial of the motion."  Furthermore, Local Rule 56.1(c) provides that numbered paragraphs which are not controverted by a corresponding paragraph in the opposing party's corresponding statement are deemed admitted.

Defendant WMH argues that it is entitled to summary judgment because based on the above undisputed facts, even assuming that the saw was defective and negligently manufactured, no rational juror could find that it assumed Devlieg's Powermatic liabilities simply as a result of its purchase of the Powermatic's assets. That the plaintiff was injured, under circumstances giving rise to liability on the art of defendant's predecessor, that such injuries were caused by a Powermatic saw, and that Jet purchased the Powermatic Assets via the Powermatic Corporation, merged with Powermatic Corporation with Jet as the surviving corporation, and then changed its name to WMH Tool Group, Inc. are not in dispute

for purposes of this motion.[2] Thus, the only issues concern the effect of the bankruptcy court's "Order Authorizing Debtor to Sell 'Powermatic's Assets' Free and Clear of Liens, Encumbrances, and Interests," whether or not successor liability applies to the defendant, and whether or not there was a duty to warn.

<u>The Effect of the Bankruptcy Court's "Order Authorizing Debtor to Sell 'Powermatic's Assets' Free and Clear of Liens, Encumbrances and Interests</u>

The defendant argues that the bankruptcy court's order precludes WHM's liability. The relevant portion of the Order, ¶F provides:

> At the Closing, the Powermatic Assets shall be sold, conveyed, assigned, transferred, and delivered to the Purchaser free and clear of all liens, mortgages, pledges, security interests, restrictions, prior assignments, liabilities, obligations, encumbrances, charges, claims, and interests of any and every kind, nature, and description whatsoever, including, without limitation, those granted and imposed by prior orders of the Court, and the lines of CIT and of any and all other creditors of Debtor on the Powermatic Assets (the "Liens").

The order adds, that after the closing the purchaser will not be considered a successor of the debtor and that "the purchaser shall not be responsible for any of the Debtor's liabilities or obligations, other than those expressly assumed by the Purchaser

---

[2] The plaintiff did not submit a numbered list of undisputed facts as required by local rule 56.1(a). According to Local rule 56.1(c), the defendant's list of undisputed facts is thus deemed admitted for the purposes of this motion.

pursuant to the Asset Purchase Agreement and the Amendment."

Proceeds from a free and clear sale, such as the one above, are immune from subsequent suits against the successor. *In re Johns-Manville Corp*, 837 F.2d 89 (2d Cir. 1988).[3] It is well established that a bankruptcy court has ancillary jurisdiction to enjoin such suits. Such power derives from Title 28 U.S.C. §1334(b) which states that United States District Courts shall have, "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or *related to* cases under title 11" [emphasis added][4]. The "related to" language has been interpreted broadly to allow bankruptcy courts to rule on any proceeding whose outcome "could conceivably have any effect on the estate being administered in bankruptcy," *In re G.S.F. Corp*, 938 F.2d 1467,1475 (1st Cir. 1991), and as such, to enjoin suits against purchasers in free and clear sales under the "related to" power.

Plaintiff does not challenge the bankruptcy court's power

---

[3] The parties in this case have primarily cited cases applying New York law. "Such implied consent . . . is sufficient to establish choice of law." *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 61 (2d Cir.2004) (quoting *Krumme v. WestPoint Stevens*, Inc., 238 F.3d 133, 138 (2d Cir.2000)). In any event, the parties silence on choice of law determination allows the court to apply the law of the forum. See *Michele Pommier Models v. Men Women N.Y. Model Mgmt.*, 14 F.Supp.2d 331, 336 (S.D.N.Y.1998) (citing *Keles v. Yale University*, 889 F.Supp. 729, 733 (S.D.N.Y.1995)).

[4] This clause purports to address *district court* jurisdiction. However, its statement that such jurisdiction is not exclusive implies that such jurisdiction is shared with the bankruptcy courts. Thus, just as a district court would have jurisdiction over cases "related to cases under Title 11, so too does a bankruptcy court have jurisdiction over such cases.

generally to enjoin suits against successors following a free and clear purchase. Rather, plaintiff argues that requests for such an injunction must be brought in the bankruptcy court and not in the district court. Although in the majority of cases, both those cited by the defendant and more generally, defendants have requested an injunction against a suit brought in State or Federal Court from the bankruptcy court, defendant does not offer any precedent and indeed, none exists, showing that such suit *must* be brought in a bankruptcy court. For example, in *Forde v. Kee-Lox Mfg. Co. Inc.*, 437 F.Supp. 631(W.D.N.Y. 1977), a District Court granted summary judgment for a defendant where defendant was a successor corporation which had acquired the assets through a free and clear bankruptcy order.

Successor Liability Does Not Apply to the Defendants Under One of the Four Exceptions

Even in the absence of the bankruptcy courts order, successor liability would not apply. The general rule is that a corporation that acquires the assets of another is not liable for the torts of its predecessor. However, there are four settled exceptions: (1) if the successor expressly or impliedly assumed the predecessor's tort liability; (2) there was a consolidation or merger of seller and purchaser; (3) the purchasing corporation was a mere continuation of the selling corporation; or (4) the transaction is entered into fraudulently to escape such

obligations. *Schumacher v. Richards Shears Co., Inc.,* 59 N.Y.2d 239, 245 (N.Y. 1983). In this case, there is no evidence that any of these four exceptions apply.

With respect to the first exception, defendant cannot be held to have expressly or impliedly assumed the predecessor's tort liability as to products sold prior to the asset purchase since it specifically disavowed such liability in the Asset Purchase Agreement. *See* Asset Purchase Agreement ¶1.4(d).

The second and third exceptions are generally considered as the de facto merger theory, because they overlap to such an extent that "no criteria can be identified that distinguish them in any useful manner." *Lumbard v. Maglia* 621 F. Supp 1529 (S.D.N.Y. 1985), quoting J. Phillips, *Product Line Continuity and Successor Corporation Liability*, 58 N.Y.U.L.Rev. 906, 909 (1983). A showing of de facto merger requires evidence of four factors: (1) continuity of ownership; (2) cessation of ordinary business operations and the dissolution of the selling corporation as soon as possible after the transaction; (3) the buyer's assumption of liabilities ordinarily necessary for the uninterrupted continuation of the seller's business; and (4) continuity of management, personnel, physical location, assets and general business operation. *Id*. at 1535.

The first factor, continuity of ownership has been held to be the essence of a merger, and is accordingly a prerequisite to

the application of any de facto merger doctrine. *New York City Asbestos Litig.,* 789 N.Y.S.2d 484, 486 (N.Y. App. Div. 2005). Such continuity "exists when the shareholders of the predecessor corporation become direct or indirect shareholders of the successor corporation as the result of the successor's purchase of the predecessor's assets, as occurs in a stock-for-assets transaction." *Id*. Such continuity does not exist in this case since the successor corporation purchased assets with cash, the shareholders of DeVrieg-Bullard, did not become shareholders in Powermatic Corporation or ultimately shareholders in WHM. Because this first factor is a prerequisite for any finding of de facto merger, its absence is dispositive.

Factor two requires the cessation of ordinary business operations and the dissolution of the selling corporation as soon as possible after the transaction. It is not enough that the predecessor corporation cease ordinary business operations. It must also be dissolved. In order to prevail on this factor, plaintiff must show that "there was a corporate reorganization and only one corporation survives the transaction." *Howard v. Clifton Hydraulic Press Co.,* 830 F. Supp 708, 710 (E.D.N.Y. 1993). There is no evidence that Devlieg-Bullard was ever dissolved, thus the requirements of factor two cannot be met.

Factor three requires the assumption by the successor of the liabilities ordinarily necessary for the uninterrupted

continuation of the business of the acquired corporation. According to the Asset Purchase agreement WHM assumed only contract and license liabilities arising or performed after the closing of the asset purchase agreement, liability to employees for vacation, sick and pension pay, all liability for warranty claims, product liability claims only with respect to products sold on or after the closing date, all liabilities for cooperative advertising, and all liabilities for contributions to the employee benefit plan. Asset Purchase Agreement ¶1.4 (a-g). Even if these provisions may be read as an assumption of all WHM liabilities necessary for the uninterrupted continuation of Devlieg-Bullard's business, since factor one is dispositive, proof of this factor alone is insufficient to establish defendant's liability.

Factor four requires continuity of management, personnel, physical location, assets and general business operation. As discussed below in the context of the "continuity of the enterprise expansion," plaintiff has offered no evidence on any of these points except evidence, discussed further below, that a single employee who worked for Devlieg-Bullard, was subsequently hired by Powermatic Corporation.[5]

---

[5] In its argument against de facto merger, defendant cites *Mitchell v. Powermatic Corp.*, a Pennsylvania district court case concerning WHM liability arising from use of concerning a Powermatic tool. Defendant notes that the Pennsylvania court held that WMH has not defacto merged with Devlieg-Bullard. *Mitchell*

The fourth exception is met when the transaction is entered into fraudulently to escape obligations. There are no allegations or evidence presented by the plaintiff of such fraud, nor is there evidence in the record to support such claims. Thus, the fourth exception does not apply.

Successor Liability Does Not Apply to the Plaintiff Under an Expansion of the Successor Liability Doctrine

Plaintiff argues that even where none of the four exceptions above are met, there may be succesor liability 'where the successor corporation continues to produce the predecessor's product in the same plant." *Schumacher* 59 N.Y. 2d at 245. The *Schumacher* court considered two possible expansions of the successor corporation doctrine: a "continuity of the enterprise" of the seller expansion and "where the corporation continues to produce the predecessor's product in the same plant" expansion. *Id*. However, in *Schumacher* the Court of Appeals declined to adopt either rule and instead held that even assuming such expansions existed under New York law, their application would not be

---

*v. Powermatic Corp.* WL 292479 (E.D.P.A. 2004). Although Pennsylvania recognizes the same basic four exceptions to the no successor liability rule as New York, none of those four exceptions were raised by the parties nor discussed by the court in that case. Rather, the only issue before the court was whether or not the "product line" exception discussed below applied. The Pennsylvania court held that it did not. Since New York does not recognize this exception, the Pennsylvania Court's decision is irrelevant.

warranted on the facts of that case.

The first expansion, continuity of the enterprise, as defined by the Michigan Supreme Court in *Turner v. Bituminous Casualty Co.*, 244 N.W.2d 873 (Mich. 1976,) applies when there are "factors manifesting continuity of corporate responsibility, such as continuity of management, key personnel and physical location." *Schumacher* 59 N.Y. 2d at 246. As his sole evidence supporting this claim plaintiff points to Powermatic's employment of Patrick Curry who was employed as a design engineer by the Powermatic division of Devlieg-Bullard from 1996 to March 1999, and was hired by the newly formed Powermatic corporation as operations manager in October 1999. Evidence of one engineer's continued employment standing alone does not qualify as a continuity of corporate responsibility. In any case, Curry left Devlieg-Bullard before the Asset Sale to go work at the unaffiliated corporation Hart & Cooley, and was only subsequently hired by the Powermatic Corporation after the Asset Sale. Curry's position has thus not been continuous and cannot establish this exception even if recognized in New York.

The second expansion, the same product line in the same plant expansion, was defined by the California Supreme Court in *Ray v. Alad Corp.*, 19 Cal. 3d 22 (Cal. 1977). According to the Court in *Schumacher*, relevant factors required to establish this expansion include use of essentially the same factory, name,

office personnel, and product production.  There is no evidence in this case that these factors can be established, thus the plaintiff cannot claim recovery under this theory.

Defendants Did Not Have a Duty to Warn

Separate from successor liability, an acquiring corporation may have a duty to warn.  Such a duty arises because of, "the relationship between the acquiring corporation and the purchaser of the machinery . . . and because of the knowledge which the acquiring corporation possesses or has reason to possess concerning the risk of personal injury created by operation of the machine." *Schumacher* 59 N.Y. 2d at 243.  Factors to be considered include, "succession to a predecessor's service contracts, coverage of the particular machine under a service contract, service of that machine by the purchaser corporation, a purchaser corporation's knowledge of defects and of the location or owner of that machine." *Id.* at 246, (quoting *Travis v. Harris Corp.,* 565 F.2d 443, 448 (7th Cir. 1977)).  In this case, there is no evidence that WHM had any relationship with the plaintiff or his employer.  There has been no showing that WHM succeeded to any of DeVlieg-Bullard's service contracts, that WHM entered into any service contracts with plaintiff's employer United Custom Made Furniture, nor that WHM knew or had reason to know of any defects in the machine.  Thus, WHM cannot be held liable for

a failure to warn.

In his response to defendant's motion for summary judgment plaintiff repeatedly alleges that facts still to be discovered may present genuine issues of material fact which would preclude summary judgment and that he has not had "the opportunity to conduct discovery in this matter." Plaintiff's Opp. at ¶4.

As the docket in this case shows, plaintiff has had ample opportunity for discovery. On September 30, 2004 Magistrate Judge Matsumoto ordered: "(1) The parties will exchange their mandatory disclosures pursuant to Federal Rule of Civil Procedure 26(a) on or before 10/14/04. (2) The parties will serve interrogatories and document requests by 11/16/04. (3) Factual discovery must be completed by 3/31/05." The plaintiff thus had six weeks to serve interrogatories and documents requests.

But even if the plaintiff were to argue that Magistrate Judge Matsumoto's discovery time frame did not allow for adequate discovery then the proper procedure is not to oppose the summary judgment motion with a claim that other facts might be discoverable, but rather to submit an affidavit pursuant to Fed. R. Civ. P. 56(f). "A reference to Rule 56(f) and to the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a rule 56(f) affidavit." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d. Cir. 1994). Indeed, "the failure to file an

affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate. *Id*.

If the plaintiff had submitted the appropriate affidavit he would have had to meet the Second Circuit's four part test for the sufficiency of an affidavit under Rule 56(f). This test requires that the affidavit include "the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful." *Id.* at 1138. Plaintiff does to some extent indicate the nature of the uncompleted discovery and how the facts sought might create a genuine issue of material fact, in that he outlines some of the depositions he would like to conduct to determine the details of the jet/powermatic merger, (Plaintiff Opp. ¶7) and the continuity of management, key personal and physical location necessary to show successor liability (Plaintiff Opp. ¶13). However, the plaintiff has made no showing that he made any effort to date to obtain these facts nor demonstrated why any efforts he has made were unsuccessful.

## CONCLUSION

For the reasons set forth above, the defendant's motion for summary judgment is granted.

The clerk is directed to furnish a filed copy of the within

to the parties and the Magistrate Judge and to enter a judgment dismissing the complaint.

SO ORDERED.

Dated : Brooklyn, New York

August 18, 2005

By: /s/ Charles P. Sifton (electronically signed)
United States District Judge